IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CROWN EQUIPMENT CORPORATION,
        Appellant,

v.                                                                       Civil Action No. 3:18-cv-810-JAG

TOYS "R" US, INC., et al.,
        Appellees.

## OPINION

Crown Equipment Corporation ("Crown") appeals an order of the United States Bankruptcy Court for the Eastern District of Virginia, which allowed Toys "R" Us, Inc. ("TRU") to reject a service contract it had entered with Crown before TRU declared bankruptcy. For the reasons that follow, the Court will affirm the decision of the Bankruptcy Court.

## I. BACKGROUND

In 2007, Crown and TRU entered into a contract called the Master Services Agreement ("MSA"), in which Crown agreed to perform forklift maintenance at TRU's warehouses. The parties originally agreed to the MSA for three years, and the MSA automatically renewed for each subsequent year with updated prices. TRU incurred a hefty debt for forklift repair services performed before TRU declared bankruptcy in September, 2017. In December, 2017, the Bankruptcy Court entered an order detailing the procedure TRU must follow to assume or reject its many contracts (the "Procedure Order"), including the MSA.[1]

---

[1] Parties may assume or reject contracts they entered into before declaring bankruptcy. When a party assumes a contract, it "elect[s] to perform" the contract and take on all its obligations. *In re Lucash*, 370 B.R. 664, 670 (Bankr. E.D. Va. 2007). Alternatively, parties may reject contracts and "elect to breach" them. *Id.* Here, if TRU assumed the MSA, Crown would receive payment for TRU's pre-bankruptcy debt before other creditors.

After TRU declared bankruptcy, Crown contacted TRU to discuss the future of the MSA. Crown says that high-level TRU officials told Crown that TRU would assume the MSA, but TRU disputes that claim.[2] In any event, the parties updated the MSA to reflect new labor rates and changed the effective date. Crown continued to provide forklift repair services to TRU, and TRU paid Crown for all services rendered after TRU declared bankruptcy. On June 4, 2018, TRU asked the Bankruptcy Court to formally reject the MSA.[3] Crown objected, arguing that TRU had assumed the MSA.

The Bankruptcy Court granted TRU's request to reject the MSA, holding that the Bankruptcy Code requires court approval before assumption, that parties cannot assume contracts by words or conduct, and that allowing assumption would render the Procedure Order meaningless. This appeal followed.

## II. DISCUSSION

District courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" of bankruptcy courts. 28 U.S.C. § 158(a)(1). Additionally, district courts review the factual findings of a bankruptcy court for clear error and review questions of law de novo. *In re Anderson*, 811 F.3d 166, 171 (4th Cir. 2016).

### A. Assumption Pursuant to the Bankruptcy Code

Under § 365(a) of the Bankruptcy Code, parties may, "subject to the court's approval . . . assume or reject any executory contract or unexpired lease."[4] 11 U.S.C § 365(a). Parties must

---

[2] The Bankruptcy Court did not decide whether the TRU executives promised to assume the contract.
[3] TRU filed the original request to reject the MSA on May 29, 2018. The original and amended requests are substantially similar.
[4] An executory contract exists when both parties have unfulfilled obligations under the contract and when the failure to fulfill those obligations would result in a breach. *In re Sunterra Corp.*,

2

obtain court approval before assuming or rejecting an executory contract. *In re Merry-Go-Round Enters., Inc.*, 400 F.3d 219, 225-26 (4th Cir. 2005). To assume an executory contract, parties also must "cure" the debt owed pursuant to the contract or "provide adequate assurance of future performance." 11 U.S.C § 365(b)(1)(A)-(C). In this case, the parties agree that TRU never sought court approval to assume the MSA. Because TRU did not seek court approval to assume the MSA, TRU did not assume the MSA pursuant to the Bankruptcy Code.

### B. Implied Assumption

Crown also argues that TRU assumed the MSA by its words and deeds. Courts generally prohibit the implied assumption of executory contracts because § 365 of the Bankruptcy Code requires court approval. *See In re Merry-Go-Round Enters.*, 400 F.3d at 226; *In re A.H. Robins Co.*, 68 B.R. 705, 711 (Bankr. E.D. Va. 1986) (holding that court approval is not a "perfunctory step" that parties can avoid by arguing implied assumption).

Courts, however, allow implied assumption of executory contracts in rare circumstances. *See, e.g., In re Clavis Smith Bldg., Inc*, 112 B.R. 768, 770 (Bankr. E.D. Va. 1990) (permitting implied assumption when the bankrupt party tried to reject a real estate contract that required it to pay the broker a commission). For example, courts allow implied assumption when parties try to avoid paying a creditor for both pre- and post-bankruptcy services or try to disadvantage the creditor over other creditors. *Cf. In re A.H. Robins Co.*, 68 B.R. at 711 (rejecting implied assumption because the bankrupt party paid all post-bankruptcy premiums and did not cause any more prejudice than what all creditors in bankruptcy suffer).

---

361 F.3d 257, 264 (4th Cir. 2004) (internal citations omitted). Here, TRU and Crown agree that the MSA is an executory contract subject to assumption or rejection.

3

Here, after TRU declared bankruptcy, TRU changed the date on the MSA, asked to update the labor rates, and allegedly told Crown that it would assume the contract. Although TRU continued to receive benefits from Crown, TRU did not swindle Crown out of compensation. Implied assumption requires more than just the "acceptance of benefits." *Id.* TRU has paid for all forklift repair services Crown rendered after TRU declared bankruptcy, and only owes Crown for services rendered before TRU declared bankruptcy. Crown is in no worse position than TRU's many other creditors. In other words, this case is not the "rare instance" in which a party's conduct constitutes implied assumption. *See id.* at 710.

Moreover, § 365 exists to "maximiz[e] the value of the estate for the benefit of all creditors, while preserving certain rights of parties to contracts with the debtor." *In re Kelly Lyn Franchise Co.*, 26 B.R. 441, 445 (Bankr. M.D. Tenn. 1983). Allowing Crown to use implied assumption to prioritize its debts over the debts of TRU's other creditors would frustrate the purpose underlying § 365. *See In re A.H. Robins Co.*, 68 B.R. at 711.

## C. Equitable Relief

Finally, Crown contends that the Bankruptcy Court should have used its equitable powers to compel TRU to assume the MSA. "[Courts] may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). A bankruptcy court's equitable powers under § 105 "must and can only be exercised within the confines of the Bankruptcy Code." *Law v. Siegel*, 571 U.S. 415, 421 (2014). In other words, bankruptcy courts cannot use equitable powers to override any section of the Bankruptcy Code. *Id.* Section 365 allows courts to approve an assumption of a contract, not to compel parties to assume a contract. *See* 11 U.S.C. § 365(a); *In re Merry-Go-Round Enters.*, 400 F.3d at 226.

Accordingly, the Bankruptcy Court lacked the authority to use its equitable powers to compel TRU to assume the MSA.

In any event, the decision whether to grant equitable relief was within the Bankruptcy Court's discretion, which it properly declined to exercise in this case. *See In re Thinking Machines Corp.*, 67 F.3d 1021, 1028 (1st Cir. 1995). TRU did not use the formalities of the assumption process to defraud or prejudice Crown, and Crown remains in no worse position than TRU's other creditors.

### III. CONCLUSION

The Bankruptcy Court correctly allowed TRU to reject its contract with Crown. Accordingly, the Court will affirm the Bankruptcy Court's decision.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 28 June 2019
Richmond, VA

/s/ _____
John A. Gibney, Jr.
United States District Judge